## Gasperin *v.* Consolidated Coal Co., Appellant.

*Workmen's compensation—Injury in course of employment—Insanity—Suicide—Findings—Appeals.*

1. A wife is entitled to compensation for the death of her husband, where the findings, based on sufficient evidence, are in effect that the deceased committed suicide while temporarily insane, that the insanity was a direct sequence and result of injuries sustained by deceased while in the employ of defendant, and in the course of his employment.

2. The revisory powers of the appellate court, in workmen's compensation cases, are limited to such consideration of the record as will enable the court to ascertain whether, there is evidence to support the findings, and, if so, whether the law has been properly applied.

Argued May 21, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 113, March T., 1928, by defendant, from judgment of C. P. Somerset Co., Feb. T., 1928, No. 23, affirming decision of Workmen's Compensation Board awarding compensation, in case of Alfonza Gasperin v. Consolidated Coal Co.   Affirmed.

Appeal from decision of Workmen's Compensation Board awarding compensation.   Before BERKEY, P. J.

The opinion of the Supreme Court states the facts.

Decision affirmed.   Defendant appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*Charles H. Ealy,* of *Uhl & Ealy,* for appellant, cited: Continental Ins. Co. v. Delpeuch, 82 Pa. 225; Hill v. Ins. Co., 209 Pa. 632; Ford v. Dick, 288 Pa. 140; Lupfer v. Locomotive Works, 269 Pa. 275.

*Peter P. Jurchak,* for appellee, cited: Dewees v. Day, 291 Pa. 379; Ford v. Dick, 288 Pa. 140; Dumbluskey v. C. & I. Co., 270 Pa. 22; Hutno v. C. & N. Co., 270 Pa. 14; Lesko v. Coal Co., 270 Pa. 15; Kiercok v. C. & I. Co., 270 Pa. 17; Zukowsky v. C. & I. Co., 270 Pa. 118.

OPINION BY MR. JUSTICE FRAZER, June 30, 1928:

Defendant appeals from an award,—made by the Workmen's Compensation Board, affirmed by the lower court,—of compensation to claimant for the death of her husband, who was instantly killed by jumping from the window of the sixth story of a hospital, in which he was undergoing treatment at the time. Claimant contended, —and the compensation board and the lower court, in affirming the award of the referee, found,—that decedent committed suicide while temporarily insane and that the insanity was a direct sequence and result of injuries sustained by deceased while in the employ of defendant coal company and in the course of his employment, about three years previous. Appellant asserts no sufficient evidence was produced on which to base the award and to justify its affirmance by the lower court. "In this class of cases, our revisory powers are limited to such consideration of the record as will enable us to ascertain whether there is evidence to support the findings and, if so, whether the law has been properly applied": Watkins v. Pittsburgh Coal Co., 278 Pa. 463, 465, and cases there cited.

Decedent, a miner, while in the employ of defendant company in 1923, suffered a fracture of the back and other serious injuries by a fall of rock in the mine in which he was employed. A compensation agreement was later executed by the Workmen's Compensation Board and the injured man was paid compensation for total disability. His condition steadily growing worse, he was removed to the hospital, where, in February, 1926, he underwent a corrective operation for fracture of a vertebra. The operation was apparently successful, but

about a month later, while still confined to his bed in that institution, he eluded the attention of his nurse at four o'clock in the morning, reached a window, jumped or rolled from the sill, and was instantly killed by his fall to the ground below.   There appears to be no question as to these circumstances as detailed in the evidence before the referee, and in our opinion the testimony was ample to sustain his finding,—subsequently affirmed by the compensation board and the lower court,—that decedent was temporarily insane at the time he met his death and that his death was the direct result of the injuries sustained in defendant's mine in 1923.

The testimony of the surgeon who performed the operation is directly probative of that conclusion.   Decedent fell into a state of acute worriment and melancholia before and particularly after the operation; fancied, wrongly, that his family was about to be evicted from their home, and this was daily in his thought; he was extremely excitable and greatly disturbed over the fact of his inability to resume work in the future.   It was shown that, previous to his injuries in 1923, he had at no time displayed mental weakness or disturbance or condition of melancholia.   The surgeon testified that he considered him insane when he jumped from the window.   He was asked: "Q. You don't know what caused him to jump out of the window?   A. I think it was a form of insanity.   Q. And he was demented at the time? A. Yes, I think so."

The theory of suicide is also materially strengthened by the guardedly-given testimony of the hospital nurse who was decedent's attendant in the ward at the time he met his death.   She testified he seemed to be worried at times "about family affairs" and about "where he was to get the money to pay his hospital bill."   On the night of the suicide she sat at a desk within twenty feet of the bed he occupied, which was within three feet of the window.   She did not hear him leave the bed, but glancing up, she saw him on the window sill.   She ran towards

him, and, as she testified, "Just as I got hold of his arm he went out. I did not get good enough hold on him to keep him from going."

From a careful examination of all the testimony before the referee, as found in the record, the reasonable inference is inevitable that the injured man,—physically and later mentally broken by the injuries sustained while engaged in the course of his employment for defendant coal company in 1923,—suffered mental collapse and finally insanity as the culminating results of those earlier physical injuries. The preponderance of evidence supports the finding of both the referee and compensation board that a direct and unbroken causal connection existed between those injuries and his death.

The judgment of the lower court is affirmed.